**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ALAN PEDERSEN et al.,**

        **Plaintiffs,**

        v.

**MIDFIRST BANK et al.,**

        **Defendants.**
_____

**3:20-cv-411**
**(GLS/ML)**

**APPEARANCES:**

**FOR THE PLAINTIFFS:**
Harris, Beach Law Firm
677 Broadway
Suite 1101
Albany, NY 12207

**FOR THE DEFENDANTS:**
*MidFirst Bank*
Hinshaw, Culbertson Law Firm
800 Third Avenue
13th Floor
New York, NY 10022

*Property ID Title Company*
Goldberg Segalla LLP
P.O. Box 657
Buffalo, NY 14201

**OF COUNSEL:**

DANIEL R. LeCOURS, ESQ.
ELLIOT A. HALLAK, ESQ.

KYLE MEDLEY, ESQ.
MICHAEL A.S. NEWMAN, ESQ.

MARC W. BROWN, ESQ.

**Gary L. Sharpe**
**Senior District Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiffs Alan Pedersen and Nancy Pedersen bring this action against defendants MidFirst Bank and Property ID Title Company, alleging various claims relating to an apparent wire transfer fraud perpetrated against plaintiffs. (Dkt. No. 43, 2d Am. Compl.) Pending is MidFirst's motion to dismiss, (Dkt. No. 23), and a joint motion seeking dismissal of Property ID from the action, filed by plaintiffs and Property ID, (Dkt. No. 48). For the reasons that follow, both motions are granted.

### **II. Background**

**A.   Facts**[1]

At the time relevant to this litigation, plaintiffs maintained separate bank accounts at Tompkins Trust Company and M&T Trust Company. (2d Am. Compl. ¶ 14.) In September 2019, plaintiffs executed a contract to purchase real estate located in Florida for $665,000. (*Id.* ¶ 23.) A few days prior to the closing date, plaintiffs received emails, which appeared to be from their escrow agent, instructing plaintiffs to wire escrow funds, in the

---

[1] The facts are drawn from plaintiffs' second amended complaint, (Dkt. No. 43), and presented in the light most favorable to them.

2

amount of $128,745.35, to MidFirst, in the name of "PROPERTY I.D. TITLE COMPANY TRUST ACCOUNT." (*Id.* ¶¶ 26-27.)

Believing these instructions to be legitimate, plaintiffs went to the Ithaca branches of Tompkins and M&T and requested that each bank transmit wires in the amount of $64,372.68 and $64,372.67, respectively, to the Property ID account at MidFirst. (*Id.* ¶ 28.) The wire transfers were completed on October 17, 2019, and, on that same day, the proceeds were deposited into the Property ID account at MidFirst. (*Id.* ¶¶ 28, 32.)

Over the next few days, plaintiffs realized that the request to transfer funds was fraudulent. (*Id.* ¶¶ 30-31.) On October 22, 2019, Tompkins and M&T sent recall requests to MidFirst, explaining that the transfers were the product of fraud. (*Id.* ¶¶ 39-44, 48-49.) MidFirst rejected the requests, stating "BNF HAS DENIED AUTHORIZATION MULTIPLE TIMES. WE ARE UNABLE TO COMPLY WITH YOUR REQUEST." (*Id.* ¶ 45.) MidFirst suggested it would return the funds if Tompkins and M&T executed hold harmless agreements, but, when presented with the agreements, it reneged on its offer. (*Id.* ¶¶ 41, 49-50.)

Plaintiffs filed a complaint with the Federal Bureau of Investigation (FBI) to report the fraud, but the FBI informed plaintiffs that MidFirst had

not responded to its requests for information. (*Id.* ¶¶ 51-52.)

Plaintiffs requested that MidFirst conduct an investigation, but MidFirst's Vice President Kyle Maloney informed plaintiffs that, because Property ID had declined to return the funds, there was nothing MidFirst could do. (*Id.* ¶¶ 46, 53-54.) Specifically, Maloney explained that MidFirst "contacted [Property ID] to request their authorization to return the funds, but [Property ID] declined the request." (*Id.* ¶ 54.) Maloney also stated that MidFirst had "made the necessary inquiries" concerning the fraudulent wires and had "communicated the results . . . to law enforcement in Florida." (*Id.*) Property ID has not returned plaintiffs' funds. (*Id.* ¶ 38.)

**B.     Procedural History**

Plaintiffs commenced the instant action on April 8, 2020. (Compl., Dkt. No. 1.) MidFirst then filed its pre-answer motion to dismiss the amended complaint, (Dkt. No. 23), and Property ID filed an answer to the amended complaint, (Dkt. No. 26). Plaintiffs were thereafter permitted to amend for a second time, (Dkt. Nos. 42, 43), and MidFirst advised the court that it wished to rely upon its previously filed motion to dismiss, (Dkt. No. 45). On November 23, 2020, after purportedly reaching a settlement with Property ID, plaintiffs filed a stipulation of dismissal, with prejudice, as to

4

Property ID only, (Dkt. No. 46), which the court denied, with leave to renew, explaining that Fed. R. Civ. P. 41(a)(1)(A)(ii) requires the stipulation of dismissal to be signed by all parties who have appeared, (Dkt. No. 47).

Plaintiffs allege the following causes of action against MidFirst: (1) aiding and abetting fraud, (2) aiding and abetting conversion, (3) aiding and abetting breach of fiduciary duty, (4) conversion, (5) negligence, and (6) unjust enrichment, (2d Am. Compl. ¶¶ 71-78, 85,92, 99-113, 121-128, 136-142), and the following causes of action against Property ID: (1) fraud, (2) conversion, (3) breach of fiduciary duty, (4) negligence, and (5) unjust enrichment, (*id.* at ¶¶ 64-70, 79-84, 93-98, 114-120, 129-135).

## III.  Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

## IV.  Discussion[2]

---

[2] The parties appear to agree that California law governs the substantive claims in this diversity action.  (Dkt. No. 23, Attach. 1 at 4-5; Dkt. No. 29 at 7.)  Because the wire at issue was sent to 1st Century Bank, a division of MidFirst operating exclusively in California, (2d Am. Compl. ¶¶ 16-17), it appears California law applies.  *See Wellton Int'l Express v. Bank of China (Hong Kong)*, No. 19-CV-6834, 2020 WL 1659889, at *4 (S.D.N.Y. Apr. 3, 2020) ("New York's Article 4-A provides that 'the rights and obligations between the sender of a payment order and

## A.    <u>MidFirst's Motion to Dismiss</u>

MidFirst argues that plaintiffs' claims should be dismissed for the following reasons: MidFirst had no duty to reverse the payment order; it had no duty to freeze Property ID's account; the claims are preempted by U.C.C. Article 4A; and the elements for aiding and abetting, conversion, negligence, and unjust enrichment have not been satisfied.  (Dkt. No. 23, Attach. 1 at 4-24.)  In response, plaintiffs contend that the U.C.C. is inapplicable to their claims because they are not only seeking relief for MidFirst's processing of the wire transfers, but for "what it did or failed to do both before and after the fraudulent wire transfers"; they have adequately pleaded that MidFirst "both knew about and actively participated in Property ID's tortious conduct against them," and that MidFirst had a "duty to make reasonable inquiry and endeavor to prevent a diversion" of the funds; and MidFirst "allowed its banking platform and accounts to be used to retain the benefit of having [plaintiffs'] funds on deposit in its account,

---

the receiving bank are governed by the law of the jurisdiction where the receiving bank is located.'" (quoting N.Y. U.C.C. § 4-A-507(1)(a)); Cal. U.C.C. § 11507(a)(1) ("The rights and obligations between the sender of a payment order and the receiving bank are governed by the law of the jurisdiction in which the receiving bank is located.").  Because the parties also cite to New York law, and because the relevant applicable law in New York and California are substantially the same, New York may be informative to the analysis.  *See Fariba v. Dealer Servs. Corp*., 178 Cal. App. 4th 156, 166 n.3 (Cal. Ct. App. 2009) ("Case law from other jurisdictions applying our Commercial Code, the UCC, or the uniform code of other states, are considered good authority in litigation arising under the California act." (citations omitted)).

6

despite receiving notice of the fraud that had been perpetrated upon them." (Dkt. No. 29 at 6-22.) The court agrees with MidFirst.

"Article 4A displaces any common law claim if the UCC's provisions squarely cover the transactions at issue, . . . and was intended to be the exclusive means of determining the rights, duties and liabilities of banks and their customers with respect to such transfers." *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-cv-02778, 2019 WL 3503109, at *3 (N.D. Cal. Aug. 1, 2019) (citing *Zengen v. Comerica Bank*, 41 Cal. 4th 239, 244, 253-54 (Cal. 2007) (internal quotation marks omitted)). "The California Supreme Court has held that because the U.C.C. provides a remedy for a bank's processing of fraudulent payment orders, it displaces common-law claims like [a] negligence claim." *Sliders Trading Co. L.L.C. v. Wells Fargo Bank NA*, No. 17-cv-04930, 2017 WL 6539843, at *5 (N.D. Cal. Dec. 21, 2017) (citation omitted).

Accordingly, to the extent plaintiffs' claims are based on MidFirst's processing of the wire transfer, they are preempted by the U.C.C., and thus, dismissed. *See Allied Contracting II Corp. v. CTBC Bank Corp. (USA)*, No. 653443/2018, 2020 WL 2135801, at *3 (N.Y. Sup. Ct. May 2, 2020) ("Contrary to plaintiff's contention, the gravamen of the complaint

7

concerns the mechanics of an electronic fund transfer and the parties' rights and obligations with respect to those transfers.  Consequently, the allegations fall squarely within Article 4-A."); *Bayerische Hypo-Und Vereinsbank Ag v. HSBC Bank USA, N.A.*, No. 602761/2009, 2015 WL 4455948, at *8 (N.Y. Sup. Ct. July 15, 2015) (dismissing the plaintiffs' claims arising out of the defendant bank's processing of a wire transfer, holding that such claims assert liability of the bank that are inconsistent with U.C.C. Article 4A).

However, to the extent plaintiffs' claims are based on MidFirst's actions before and after the processing of the wire transfer, such claims are not preempted.  Indeed, "the UCC does not displace all common law actions based on all activities surrounding funds transfers."  *Venture Gen. Agency, LLC*, 2019 WL 3503109, at *4 (internal quotation marks and citation omitted).

Here, plaintiffs maintain that "[t]he focus of [plaintiffs'] claims against MidFirst is what it did or failed to do both before and after the fraudulent wire transfers," and "[t]he U.C.C. wire transfer provisions do not address a bank's duties outside of the mechanics of administering a wire transfer." (Dkt. No. 29 at 6-7.)  Specifically, plaintiffs point to MidFirst's conduct

8

purportedly taken before and after the wire transfers: MidFirst "actively impeded [plaintiffs'] efforts to secure the return of the stolen funds, including by hindering the FBI's investigation"; "refused to take appropriate action upon learning that Property ID's trust account was used to perpetrate fraud, including a proper investigation"; "failed to appropriately monitor Property ID's trust account for indicia of fraud"; "failed to implement appropriate security measures for trust accounts at the bank"; and "permitted[] Property ID to utilize its trust account to complete its theft of [plaintiffs'] funds." (*Id.* at 8.)  Accepting these allegations as true, and construing them in the light most favorable to them, plaintiffs' claims are not preempted.  Nevertheless, plaintiffs' second amended complaint fails to state claims of negligence, aiding and abetting, conversion, and unjust enrichment.

   1.   *Negligence*

"The elements of a negligence claim are: (1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damage." *Sliders Trading Co. L.L.C.*, 2017 WL 6539843, at *8 (citation omitted).  "A duty to exercise due care is an obligation to conform to a certain standard of conduct for the protection of others against

unreasonable risks." *Id.* (internal quotation marks and citation omitted). "The existence of a duty is a question of law and thus is often suited to a Rule 12(b)(6) disposition." *Id.* (citation omitted). "Banks do not owe a duty of care to non-customers to protect them from the tortious conduct of the banks' customers." *Id.* (citations omitted); *see Venture Gen. Agency, LLC*, 2019 WL 3503109, at *5 ("Recent cases have held that absent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer." (citations omitted)).

Plaintiffs concede that, generally, banks do not owe duties to non-customers, but argue that "the situation in this case is different." (Dkt. No. 29 at 18.) However, to the extent plaintiffs attempt to carve out an exception for themselves by arguing that MidFirst owed some heightened duty to them, (*id.* at 19-20), such arguments are unavailing. Indeed, plaintiffs have not pleaded that they are customers of MidFirst, and thus, MidFirst owes plaintiffs no duty of care. *See Venture Gen. Agency, LLC*, 2019 WL 3503109, at *6. Accordingly, MidFirst's motion to dismiss plaintiffs' negligence claim is granted, and the claim is dismissed.

    2.    *Aiding and Abetting Fraud, Conversion, and Breach of Fiduciary Duty Claims*

10

"Under California law, a defendant can be held liable for aiding and abetting another's intentional tort, where the defendant had actual knowledge of the specific primary wrong and substantially assisted." *S&S Worldwide, Inc. v. Wells Fargo Bank*, No. 20-cv-01926, 2020 WL 7714534, at *7 (N.D. Cal. Dec. 29, 2020) (internal quotation marks and citation omitted). "Although . . . 'knowledge' may be 'alleged generally,' a plaintiff may not merely allege that a defendant 'knew' of some specified circumstance." *Id.* (citations omitted).

Plaintiffs fail to assert sufficient factual allegations from which the court can plausibly infer that MidFirst had actual knowledge of Property ID's wire fraud scam prior to or at the time of the wire transfer. (*See generally* 2d Am. Compl.) Plaintiffs contend that "MidFirst both knew about and actively participated in Property ID's tortious conduct against them" by permitting Property ID to utilize its trust account to commit the alleged fraudulent conduct against plaintiffs, failing to take appropriate action upon learning of such conduct, failing to follow proper protocol, and failing to freeze and/or return the funds. (Dkt. No. 29 at 15.) These vague and conclusory assertions do not suffice. *S&S Worldwide, Inc.*, 2020 WL 7714534, at *7.

11

As it pertains to MidFirst's conduct after becoming aware of the fraud, as noted above, banks do not owe a duty of care to non-customers to protect them from the tortious conduct of the banks' customers. *See Sliders Trading Co. L.L.C.*, 2017 WL 6539843, at *8; *see also Heinert v. Bank of Am., N.A.*, 410 F. Supp. 3d 544, 552 (W.D.N.Y. 2019), *aff'd*, 835 F. App'x 627 (2d Cir. 2020) ("[B]anks do not owe non-customers a duty to protect them from the intentional torts of their customers. . . . With billions of banking transactions occurring in New York alone, this would be the equivalent of making New York banks liable to the world's banking public." (citation omitted)); *Allied Contracting II Corp.*, 2020 WL 2135801, at *6 ("The complaint alleges that defendant knew of the Account Holders' fraudulent scheme and failed to act, but these allegations amount to merely a lapse of wary vigilance.  This is insufficient." (internal quotation marks and citation omitted)).

Lastly, to the extent plaintiffs argue that MidFirst "hindered the FBI's investigation by refusing to cooperate," (Dkt. No. 29 at 17), such argument is unavailing.  First and foremost, plaintiffs' factual allegations merely claim that "the FBI indicated that [MidFirst] had not responded to its inquiries." (2d Am. Compl. ¶ 53.)  And even if plaintiffs alleged sufficient facts from

which it could be plausibly inferred that MidFirst "hindered the FBI's investigation," plaintiffs fail to cite to any authority indicating that MidFirst had a duty to cooperate with the FBI, or that it can be liable for failing to do so. Accordingly, MidFirst's motion to dismiss plaintiffs' aiding and abetting fraud, aiding and abetting conversion, and aiding and abetting breach of fiduciary duty claims are granted, and these claims are dismissed.

3. *Conversion and Unjust Enrichment*

To establish a claim for conversion under California law, a plaintiff must plead: "[1] ownership or right to possession of property; [2] wrongful disposition of that property right; and [3] monetary damages." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1003 (N.D. Cal. 2001) (citation omitted).

In California, "[u]njust enrichment itself is not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies; it is synonymous with restitution." *S&S Worldwide, Inc.*, 2020 WL 7714534, at *8 (internal quotation marks and citation omitted). "Consequently, the question is whether [the plaintiff] has sufficiently plead[ed] a cause of action giving rise to a right to restitution." *Id.* (internal quotation marks and citation omitted). "The person receiving

13

the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it."  *McBride v. Boughton*, 123 Cal. App. 4th 379, 389 (Cal. Ct. App. 2004) (citations omitted); *see Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1073 (N.D. Cal. 2009), *aff'd,* 633 F.3d 1067 (Fed. Cir. 2010) ("[E]ven when a party has received a benefit from another, it is required to make restitution only if the circumstances of its receipt or retention are such that, as between the two parties, the retention of the benefit is unjust.  This requires wrongful conduct on the part of the party receiving the benefit." (citations omitted)).

    Here, because there are no allegations of any wrongful or improper act of dominion by MidFirst in contravention of plaintiffs' rights, plaintiffs' conversion and unjust enrichment claims fail.  *See Cumis Ins. Soc., Inc. v. Citibank, N.A.*, 921 F. Supp. 1100, 1110 (S.D.N.Y. 1996) ("[The plaintiff] does not state a claim because all of the acts alleged to constitute a conversion were specifically authorized under applicable provisions of the U.C.C. and were not wrongful, improper, or in contravention of [the defendant's] rights.").  Accordingly, MidFirst's motion to dismiss plaintiffs' conversion and unjust enrichment claims is granted, and these claims are

dismissed.

## B. Joint Motion to Dismiss Property ID

Plaintiffs and Property ID have jointly moved to dismiss Property ID from the action, arguing that the parties have settled plaintiffs' claims against Property ID. (Dkt. No. 48, Attach. 4 at 4.) MidFirst opposes the motion to the extent that it would prejudice MidFirst's rights to pursue any further claims against Property ID, if necessary. (Dkt. No. 49.) In light of the fact that the claims against MidFirst are dismissed, the joint motion is granted.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that MidFirst's motion to dismiss (Dkt. No. 23) is **GRANTED**; and it is further

**ORDERED** that plaintiffs' and Property ID's joint motion to dismiss Property ID (Dkt. No. 48) is **GRANTED**; and it is further

**ORDERED** that plaintiffs' second amended complaint (Dkt. No. 43) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

March 19, 2021
Albany, New York

Gary L. Sharpe
U.S. District Judge